PARKS, Associate Justice
(concurring specially).
Summarizing the material allegations of the pleadings focusing the controversy between the parties, plaintiff Applebaum’s complaint alleges that he and defendant Appel, on May 5, 1952, agreed in writing to buy from Harry E. Daumit, the entire capital stock, consisting of 100 shares of the Corporation, Harry Daumit Drugs, Inc. The corporation owned a drug store business in Miama, and its balance sheet attached to the Bill of Complaint showed assets of $125,000. Under the contract the right to vote the stock was granted jointly to plaintiff and defendant; the certificates were endorsed to both of them with title retained in the seller, subject to performance of the obligations of the contract, and upon their performance, the stock to be transferred to himself and defendant. Prior to the making of the agreement for the purchase of the stock, he and defendant orally agreed that each was to own one-half of it; in consideration of promoting and closing the contract with Daumit for the purchase of the business, he was to receive this one-half interest in the stock, and the defendant was to pay for the business; he invested $500 in the business, his skill and experience in acquiring and bringing in to its present *739 worth of approximately $150,000, as of the time of filing suit March 19, 1953. There followed lengthy allegations charging the defendant in his management and control of the business, with various acts directed against plaintiff, all to the end of ousting him from the business, depriving him of his interest in it, and appropriating its exclusive management and control to himself. The prayer is that a receiver be appointed to operate the business; the defendant be restrained from disposing of any of the properties and effects of the business; and the Court determine the respective shares and interests of himself and defendant.
The defendant answering admitted the making of the written contract for the purchase of the business, but denied seriatim that plaintiff purchased any of the capital stock of the corporation; or that he promoted the purchase of the stock or was to promote its business; or under the oral agreement between the parties he was to become owner of one-half of the stock; denied any wrongdoing in his management and control of the business in violation of plaintiff’s rights. He alleges that he and his sister invested the sum of $28,000 in the business, which sum represented the entire cash payment on the stock, the balance of the purchase price to be paid out of a percentage of sales made in the business; upon becoming interested in the purchase of the business, he advised plaintiff, his nephew, thereof, and because of their relationship and his desire to aid plaintiff in becoming interested in a substantial business, he agreed with him that he would purchase the stock in the corporation and pay the entire purchase price, using his own and his sister’s funds to make the cash payment, and would sell the plaintiff 30 shares of the stock, upon payment of his pro-rata share of the purchase price; that in part payment thereof, the plaintiff agreed that he should immediately dispose of his interest in a drug store of which he was part owner and the funds received from the sale should be utilized to pay in part the purchase price due defendant for the 30 shares of stock of the corporation, and would devote his entire time as a pharmacist to the business.
Continuing, he alleges that after the transaction for the purchase was closed, defendant employed plaintiff to work as a pharmacist in the store as agreed to, but he declined and refused to perform these duties, requiring the corporation to employ a pharmacist to perform this service, and his services in the business became wholly unsatisfactory; he refused to dispose of his business and devote the proceeds to pay or otherwise pay any part of the purchase price of the stock as agreed; while so employed his irregular and improper handling of the funds and property of the corporation justified defendant, as its officer, to believe the plaintiff was utilizing his employment for the purpose of making secret profits out of the business; and the failure and refusal of plaintiff to perform his part of the contract, his Unsatisfactory service and conduct while in the employ of the corporation, finally caused defendant to discharge him and terminate the contract.
The Chancellor in a decree in general terms, found and decreed that plaintiff had not established by his proof facts which entitled him to recover any interest in the business or any ownership of the shares of the capital stock of the corporation; that $500 shown on the books of the corporation as derived from the sale of certain suntan oil, property of the corporation, as a contribution by the plaintiff to the capital stock of the said corporation, be returned to him and the books be corrected to that end; that certain sums of money withdrawn and paid to the plaintiff while employed by the corporation reflected on the books as a loan to the plaintiff, were not indebtedness due the corporation, but were sums paid to plaintiff as salary while employed by it. The bill was dismissed at the cost of plaintiff.
The dominant problem in controversy was the settling of the terms of the agreement between the parties respecting their rights and interests in the purchase of the stock of the corporation. The evidence was conflicting and the Chancellor resolving *740 the conflict in his decree, rejected plaintiffs version and substantially approved and adopted defendant’s version of the contractual relationship, rights and interests of the parties thereunder. He likewise found the breach thereof by the plaintiff, as pleaded in the answer. In effect, it was decreed that the relationship between'the plaintiff and defendant was controlled by the oral agreement, and under its terms plaintiff had no more than an agreement with the defendant to purchase 30 shares of the corporation stock on terms averred in defendant’s answer, which agreement he never performed in any substantial decree and which he finally refused to perform. Because of the conduct of plaintiff and his breach of the contract, the Court found and decreed that defendant was justified in terminating or rescinding it. The evidence supports the decree.
The record reflects that plaintiff in his complaint, in the Lower Court and in his brief and argument in this Court, grounded his claim of a one-half interest in the corporation stock, partially on an oral agreement between hito and defendant, and partially on the written contract of purchase and sale between Daumit, the seller, and himself and defendant as buyers. He contends inconsistently that the purported equality of interest in the stock received by them under the written terms of the purchase contract may not be shown to be otherwise by the oral agreement of the parties, nor may patrol evidence for that purpose be received by the Court.
The purchase contract provides for sale and transfer of the stock to both parties, but in no respect does its terms define or mention the terms or conditions of any agreement inter sese concerning their respective rights, obligations and interests in the purchase. Its terms and obligations run only between the seller on the one hand, and the buyers on the other. It imposes joint and several liability upon the buyers to the seller, as partners or joint adventurers. Under its terms, presumptively the buyers receive equal shares in the stock, but - such presumption is not conclusive and -disappears upon proof of an agreement between them, whether written or oral, that their interests are otherwise. Such oral agreement inter - sese in no respect violates or changes the obligations of the written purchase contract. Parol contracts of the nature of this one between plaintiff and defendant as co-obligors, are not uncommon in transactions in connection with written contracts for the purchase and sale of realty and personalty. It has long been settled in this State that such oral contracts do not vary written contracts of the general nature of the one under consideration and parol evidence is admissible to prove the terms of such oral contracts.
In Chamberlain v. Lesley, 39 Fla. 452, 22 So. 736, 738, this Court held:
“The papers, neither separately nor combined, purported to state all the terms of the agreement between the plaintiff and defendant. As a matter of fact, the notes and mortgages were not contracts between the plaintiff and the defendant, but were contracts between the plaintiff and the defendant on the one part and a third party on the other. These papers purported to show the contract between the plaintiff and defendant to and with a third person, but not as between themselves. The rule excluding parol evidence does not apply to cases where the original contract was verbal and entire, and a part only of it has been reduced to writing. Where, therefore, the writings do not purport to contain ■ the entire agreement, nor to have been intended as a complete statement or performance of the whole contract, and they were executed in pursuance of a parol agreement, and in part performance thereof, parol evidence of the verbal agreement is admissible in all cases where such evidence is consistent with, and not contrary to, such written instruments.”
In McClure v. Century Estates, 96 Fla. 568, 120 So. 4, 10, the rule is stated:
“This court has held in several cases, considered in .the past, that the parol testimony cannot be introduced to vary *741 or contradict a valid written contract. *' * * But it - has also held .that, where the written instrument does not speak concerning 'essential elements of 'the contract, or where there is ambiguity or uncertainty as to the meaning of the contract which the writing undertakes to evidence, parol evidence may be introduced for the purpose of showing the essential matters concerning the transaction between the parties not contained in the writing, or to explain ambiguity or uncertainties. * * *
“ ‘The rule excluding parol evidence to vary a writing has been held to be not applicable in a controversy between the parties to an instrument whose interests thereunder, are the same, or their privies.’ ”
To like effect, in Florida Moss Products Co. v. City of Leesburg, 93 Fla. 656, 112 So. 572, 575, it is held:
“ ‘This (the parol) evidence did not in any respect tend to change, alter, or add to the deeds, mortgages, and notes offered in evidence. The legal effect of each of these papers was the same, with or without the- oral testimony. It neither took from, nor added to, these papers, in the slightest degree, but was entirely consistent therewith.’ ”
In 32 C.J.S., Evidence, § 862, the rule is stated: - •
“The rule excluding. parol evidence to vary a writing is not applicable in a controversy between parties to the instrument whose interests thereunder are the same, or their privies, as in the case of contests between grantors, grantees, coobligors, or coobligees, or between privies of parties on the same side.”
In view of these precedents, it would seem unnecessary to refer to other authority that the presumption that the parties as buyers received equal shares or interests under a written contract as in the instant case, is rebuttable and disappears with proof to the contrary. If it is thought necessary, the following cases so hold: Osborne v. Osborne, 325 Ill. 229, 156 N.E. 306; Lowell v. Lowell, 185 Iowa 508, 170 N.W. 811; Jackson v. Jackson, Tex.Civ.App., 258 S.W. 231.
The decree is affirmed.
SEBRING and ROBERTS, JJ., concur.
HOBSON, J., agrees to conclusion.
DREW, C. J., and TERRELL and THORNAL, JJ., dissent.